The next case of the day is Travis Koester v. State Labor Relations Board for the appellant Mr. Baker, for the appellee Mr. Dozman and Mr. Hardy. And you've got your time divided. You may proceed. Thank you. May it please the court, counsel, my name is John Baker and I represent the appellant Travis Koester in this matter. This case, at its surface I suppose, seems somewhat simplistic, but it really stands for a fairly important principle. And that is the right that individuals have to file grievances in the workplace. And while the other side has made a lot out of this, the facts in this case are remarkably simple. Travis Koester is an employee of the Sangamon County Sheriff's Department. He's a sheriff's deputy. He is assigned to the tactical control unit, a special unit within that agency. Travis Koester worked on the tactical control unit with approximately 20 plus other co-members of that unit. He filed a couple of grievances challenging a promotional decision. As soon as he did that, co-workers of his on the tactical TCU became concerned about that.  That memo is outlined in the record, and it's in our appendix, pages 40 through 42. As a result of that memo, there was then a meeting amongst the team members, and subsequently the memo, excuse me, the memo came after the meeting with team members, but the memo outlined what happened. It was submitted to the commander of the unit, and the commander recommended, based on that memo, that Mr. Koester be removed from his position, and he was removed from his position. We challenged that decision with the state labor relations board, alleging that Mr. Koester had an absolute right to file his grievance, and that by removing him from the TAC team, it was in fact a violation, a restraint of his rights under the state labor relations act. The state labor relations act requires that we establish a few things in order to prevail upon our claim. We need to establish that Travis was engaged in union or other statuary protected activity, which clearly he was. He filed a grievance. That's been defined as statuary protected. Two, that his employer was aware of the nature of the conduct. There's no dispute at all on that. And then three, the employer took adverse action against him owing to a protected activity. And that, to an extent, is where the dispute is surrounded here. We had a trial that went for a long time before an administrative law judge assigned by the board. Administrative law judge conducted a comprehensive trial, wrote a lengthy opinion, and in his opinion concluded that Mr. Koester had in fact been removed because of his grievance. Exceptions were filed to that, and the state labor relations board issued its opinion, essentially reversing that decision. What we are appealing today here obviously is the board's decision, that is the administrative action, and the appeal from that decision comes directly to this court as opposed to a typical administrative review petition which would go to the circuit court. What the board did was, and I want to backtrack and address something that they have addressed in their briefs, and that is about the lengthy set of facts. There aren't a lengthy set of facts. The facts, while there was a long trial, the facts are very, very simplistic. In fact, the recitation of facts from the board, I don't really take any objection to. It's the application of those facts to the law and the way they analyze the legal impact of those facts that is of consequence. What the board said, and I think that this is really the critical aspect of this case, and again the board's decision is included in our appendix, but it continually references the Miller Memo. The Miller Memo is the memo that was written by the teammates about this case, about Coaster. And what it says, the Miller Memo clearly indicates the TRU members were upset because, and that's in italics, or were not upset because charging party filed grievances. Rather, they were upset that the subject and nature of those grievances demonstrated that the charging party would only look out for himself at the expense of fellow team members. So what they are saying there is he has a right to file a grievance, but his coworkers took offense to that grievance because they thought it was promoting his interests at the cost of a teammate. But if we're going to go down that route as a matter of public policy, we're going to end up eviscerating the rights that employees have to file grievances. Employees have a right to file a grievance, and in fact they do it every day, both in the public sector and in the private sector. And more often than not, those grievances have the potential of impacting someone else, of impacting one of their coworkers. Somebody feels as though they were promoted over somebody else's grievances filed. Well, if that grievance comes out the other way, it's going to impact somebody else. That's exactly what happened here. Coaster filed his grievance. The board says he has a right to file his grievance. Is that the only grievance he filed? Promotion? He filed two. There are two grievances that he filed. The first one had gone back maybe 18 months before that, and I don't even remember really what it was about. It was the second grievance that caused this team meeting, and that was the meeting. That was the one over the promotion. But did the first grievance have anything to do with a fellow deputy on the same team? I apologize. I don't recall factually if it did. I believe it had something to do with a promotion that could have impacted a different promotion. I believe so. But I'm not sure that I would call it specific. And when you look at the memo, it makes clear references to that. There's no question that it was this memo that caused the removal. So who actually made the determination, the decision, to remove your file? Technically, it had to work its way up several levels. The commander was Hayes. Hayes received the Miller memo and reviewed the Miller memo with other members of the team. And Hayes then makes the recommendation to the captain. And the captain, I believe, was the one who made the final decision that it should be removed. You're asserting that the decision to remove your client was legally unjustified. Unjustifiable. You say that it was based upon the fact that your client had filed grievances. So what I'm wanting to do is identify whose decision it is that we need to look at and then examine the basis for that decision. So we know it's not – let's take, for instance, Williams. Williams is a co-equal there, or is a TRU member, right? That's Miller who is the – Miller, I'm sorry. Not Williams. Miller. So we know it's not Miller, okay? Although you cite Miller's memo and that there's discussion about grievances. But it's not Miller's memo that contains the basis for your client's removal, right? The way the question is phrased, I think I would disagree with it. I think – Did somebody later on adopt Miller's memo and the findings as justification for removing your client from the TRU? Yes, that's why, because there was this memo that was circulated and it was signed off on by all members of the TRU. Well, Hayes – what did the Hayes memo consist of in regards to mention of grievances? The Hayes memo outlined – and it's somewhere in the record. I don't know that we've attached it in our appendix. But the Hayes memo – and there was some dispute on this at trial, but I believe it became pretty clear that the Miller memo was attached to the Hayes memo. And Miller – or, excuse me, I believe Hayes said that the co-employees had lost trust in Travis. Well, the board found that the Hayes memo focused only on the trust issues on the part of the fellow TRU members and did not even mention the filing of grievances. Is that right? Is that accurate? Well, I think that that's a stretch. And what the board said, here the Miller memo made it clear that certain members of the TRU had trust issues with charging party because of the grievances he filed. So the trust issue is one of the fact that he had filed grievances. Hayes knew what the trust issue was because it's outlined in the Miller memo. So this is – and there were issues that came up throughout the proceeding about other reasons why there was a lack of trust. None of those are referenced in the board's opinion. The board's opinion on this is, here the Miller memo made it clear that certain members of the TRU had trust issues with charging party because of the grievances he filed. So the trust issue stemmed directly from the grievances filed. The finding of the board is that's the basis of the Hayes memo recommending the removal. So, you know, Hayes knew exactly what was going on because his decision was based off of the underlying Miller memo to begin with. That was the whole basis. Yes, and the Miller memo is clear. It's in the appendix. It's clear exactly what the problem was. And you say basis, but couldn't it just simply have been the precipitating event after which these additional incidents came to light and upon which the ultimate decision in terms of removal of your client from the TRU was based? Well, that's not what the evidence suggests. I mean, I think that they tried to suggest that there had been problems with Travis. The administrative logic rejected those, claiming that, you know, What was findings are we reviewing here? Well, you're reviewing the board's finding, and there is no finding from the board's as to that particular issue of previous issues. What the board says, as I read the board's opinion, is that there were trust issues with charging party because of the grievances he filed. And that's what I believe the board is saying here. And, you know, the board was saying there are trust issues because of a whole litany of issues and identified those issues that would give some factual basis to really challenge it. I don't believe that's what the board is saying here in its opinion. And the problem that I have with this is, you know, and you can look at the memo again. I think they're pretty clear on what they say. These were co-workers who didn't like the grievances that Travis was filing. And they respond, the county responds by saying, You know what? They don't like it. So now all of a sudden they don't trust him. Trust is important. We're going to remove him because they don't have trust. Well, I understand your point about what the board is saying. But some of these other things are kind of disturbing to me. The summary judgment based on the taser. Is there any dispute that these things are accurate, that there was an issue with the gun in the oven and one officer spoke up and took accountability for it, but the officer who directed him to do it, i.e., your client, didn't speak up or say anything about it. In the business about, you know, I don't know exactly what it has to do with the grievance, but was it kind of strange that you would use your girlfriend to get an FOIA request granted? And had there been complaints about excessive force that are in the record? There have very clearly been complaints about excessive force. There have been complaints about it. Yeah, absolutely. But if you reach a point where, what if you reach a point where, and I think somebody even, maybe I could be confusing this with another record about the straw that broke the camel's back. Is there some reference to that in the record about, you know, in a colloquial sense, this guy's a pain in the ass, we don't like working for him, and on top of it, he's filing these grievances. It makes him hard to get along with and it's hard to trust him. Is that the same thing as reprisal for filing grievance? Well, that's not what happened here. In fact, the administrative law judge looked at those things and said, you know, these issues of the summary judgment, the gun in the oven, these had happened a long time ago when nobody said word one about them. And so these are after-the-fact justifications. And you can go through the board's decision, and again, what the court is reviewing is what the board found. The board isn't finding that, look, there were all these problems and this was the proverbial straw that broke the camel's back. That's not in the board's finding. And so I think that when they cited in the record to throw as much as they can in there, but that doesn't mean it was the basis for the finding. The only arguments that we have about that are, I think, what the ALJ concluded. And, yeah, those things were out there, but they had been out there for quite some time. I mean, you know, Travis was, there was a summary judgment opinion issued against him by Judge Myerscough in the Central District that said that he engaged in, it wasn't with the TRU, but he had engaged in some sort of inappropriate conduct, and summary judgment was entered against him. Our argument to that was, okay, well, if that's a problem, that you lose trust in him, remove him. Nobody says remove him when that happens. Nobody suggests removing him when that happens. They don't remove him until he files his grievances. And, you know, you can go through and you can look at the memos, and the memos make it clear, and in my view, Justice Connick, to your point, the question is what constitutes the motivation, okay? And what we have here is the grievances are the motivation to remove him. But for those grievances, Coaster's not removed. There's no dispute about that. He's not. The memo never was written. The request that he be removed is never written. What if there was no reason given at all? Is this the kind of unit where it's entirely discretionary or on the unit? He could have been removed for no reason. He can't be removed for an unlawful reason. So that kind of cuts both ways in the sense that if they were fed up with him for other reasons, they could just send him back to his other duties. That's correct. Or they send him back to his other duties because they didn't like the grievances. They could remove him for any reason, just much sort of like an at-will employment arrangement. They didn't need a justification to remove him. The problem here is they did have a justification. And the reasoning for doing it, in our view, is unlawful. Well, let's say that you don't have any of the additional history incidents that were discussed that were suggested as bases for TRU members' discretion. You only had the grievances here, two grievances. Are you saying that it can never be that the content of something that's contained within the grievances can ever constitute an independent basis in a legally justified reason for removal, simply because it coincides with the filing of the grievance itself? In other words, let's just take an example. Let's say that your client has passed over for a promotion within the TRU for another individual on the TRU, and he files a grievance because he knows that this other individual has engaged in illegal acts. And he knows that because off-duty he's been surveilling not only that fellow but all of the other members of the TRU. And that's contained within the grievance now. Okay? It files the grievance. And now you have the other members of the TRU finding out that they've been surveilled by their teammate during the course of this period. But because that information came from a grievance which was filed, that no, they cannot do anything along the lines of what they did here, which is having him removed from the TRU because it coincided with the filing of the grievance. In terms of your position here, they could not do that. That would be an illegal basis for removal. More than likely, yes. However, I would add a caveat to that. If there was a rule, a department rule that said it was unlawful to surveil people off-duty, something along that lines, and the reason for the removal is because there was a violation of some independent rule, okay, then under those circumstances I would agree that there would be a reason why the employer could take action. But under your scenario where it's just a grievance and he has looked at other people, if he's not violating a workplace rule by doing that, he has every right to file his grievance. So if I'm on an elite unit, and without anyone's authorization or direction, I surveil the other members of my team, apparently hoping or suspicious that I'm going to see something, and that leader comes to light, whether the grievance is granted or not granted, the one that he files, there wouldn't be a trust issue that would justify removing them from this elite unit? I mean, you said it purported to a rule. I mean, you know, this is a side issue. Obviously, this isn't what happened. But, I mean, why do you need a rule for that? If one of these guys is surveilling me to see whether or not I work in the office at night, it's going to be pretty hard for me to continue to work with them. Whether they complain about it to the presiding judge or whether they complain about it to the Supreme Court, I don't want to be involved with people that act that way. It doesn't seem to me like we're functioning as a unit. Well, I just, and I see my light's going off. Yeah, you can answer that. I do understand, I understand your position. But, again, if there is no violation of law or violation of rule, he is simply doing what he is allowed to do. And, you know, I suppose that under those circumstances, the sheriff could come down and say, look, this violates. He can't do this. You know, he can't engage in this surveillance. But that's different than going after it because of the grievance. I didn't mean to lead you off on that. Oh, no, no. Thank you very much. Thank you. We'll talk to you on rebuttal. May it please the court. I am Assistant Attorney General Aaron Dozman, and I represent the Illinois Labor Relations Board. Section 10A1 of the Public Labor Relations Act is about managing the relationship between employers and employees. And it prohibits employers from taking adverse action that is intended to coerce, restrain, or interfere with filing grievances. The focus is on the motive of the employer. The employer here, well, the supervisor who recommended the removal of Koster was Hayes, Commander Hayes. And it's his motivation that is the only relevant factual determination here. And the board found that he was not motivated to recommend removal because Koster filed grievances. It was because the team members didn't trust him. That finding was not against the manifest way of the evidence, the overwhelming amount of evidence. But if their lack of trust, according to what the board found, was apparently related to the filing of grievances, isn't Hayes responsible for looking for the reason for that lack of trust and then realizing that this is a thorny problem? No, Your Honor. Because what Commander Hayes was told was that the team members didn't trust Koster. He can accept that as the basis for why the team members don't want him on the team. And it doesn't automatically impute any kind of improper motivation of employees to an employer. In fact, there's a lot of testimony, and this is why we spelled it out in our brief, about all these other instances that happened and formed the opinion, the accumulation of actions over a period of time that led to this deterioration of trust. It's not as simple as he filed a grievance, the team members didn't like it, and then he was removed from the team. That's just too simplistic of an explanation of what happened. That's more like a causation in a tort sense, and it doesn't explain Hayes' motivation. Hayes testified unequivocally that he was not motivated to recommend removal because Koster filed grievances. His memo recommending removal, that went to Captain Williams, didn't say anything about grievances, and that then went to the chief, and then ultimately was accepted, and he was removed from the team. There is no improper motivation that can, any imputation or inference that will outweigh the unequivocal and undisputed evidence of Hayes' motive. There's just not enough to overturn a factual determination on that, on this record. And what Koster is relying on is an inference that, oh, look at the chain of events. It must have been the grievance that was on the back of everyone's mind. Did the board analyze it that way? That, as an inference? No, you're saying that they relied upon, the guy that's really making the decision, even though it goes further up the ladder, wasn't relying on that, and that's clear to us? Yes, that is in the board's decision, and I believe we've highlighted that in our brief. It does, I mean, the Miller memo is there. The Miller memo is part of the chain of events that led to, ultimately, the trust issues coming to the foreground, and then Hayes having to deal with the trust issues. And what he said in the memo was, the team members don't trust Koster. I can't have a person on the team who the guys don't trust. That hurts operational safety and effectiveness, and so I recommend you be removed from the team. There's no direct evidence of any other motive from Koster. And you can't overturn that factual finding on administrative review based on an inference that a grievance was filed. He's trying to say that people were aware of the grievance, but awareness doesn't equal an improper motive for Hayes. That's a jump there, that it's not supported by the facts. And even if there were a strong inference, whether it's against the manifest way of the evidence, and the weight of the evidence is one-sided when it comes to Hayes' motivation. He was not motivated because of grievances. He was motivated because the team members lacked trust in him. I think we've highlighted why it's not possible to overturn the board's decision based on the arguments that have been put forth by Koster. Just to quickly reiterate, the standard of review, this is a factual question. That is well-sounded. Motive is a fact question. Fact questions are reviewed under the manifest way of the evidence standard and can only be overturned if the opposite conclusion is clearly evident or it's unreasonable or untethered to the evidence. And that's just not possible here based on the actual evidence and then also on the arguments put forth by Mr. Koster. I also want to address quickly the matter of public policy that Mr. Koster is concerned about, which is that this sets some kind of bad precedent. It doesn't set any precedent because this is a factual determination. Each one of these administrative cases are decided on the facts, and those facts come out at a hearing. And it was the charging party's burden to bring forward those facts at the hearing. We didn't meet that burden, and so he certainly can't, in the appellate court, show that the opposite conclusion is clearly evident. The board has expertise in evaluating unfair labor practices, and that factual determination here is just entitled to a significant deference, and we ask that the board affirm if the court has no further questions. Thank you. Thank you. May it please the court. Counsel. William Harding on behalf of Tengman County and the sheriff. I don't think it's fair to say that the board agreed with everything that's in the ALJ's decision. That's certainly not the case. The board did not adopt the ALJ's decision. The board mentioned the Miller Memo, but it also based its decision on the Hayes Memo, and it does say that the board reviewed the entire record. Now, the Hayes Memo, I thought it was interesting that that was not attached to the plaintiff's brief. It is attached to the sheriff's brief. We attached it as an exhibit as part of a supplemental appendix because I think it's very important that you review that. What the board said was, look, the Hayes Memo doesn't mention any trust issues, and it doesn't. Hayes testified at length that his decision had absolutely nothing to do with him filing grievances. In fact, he wasn't the only one to testify to that. Virtually every TRU member who testified said, look, we don't care how many grievances he files. It doesn't have anything to do with it. It's this lack of trust that's been developing over many, many years that has caused us to say, look, we can't work with this guy anymore. And there was a testimony, I can't remember who it was, who said this is sort of the straw that broke the camel's back. But, you know, what Mr. Baker's position is, it's kind of a temporal thing. His basic argument is, but for the fact that he filed these grievances, he wouldn't have been taken off the TRU. Well, first of all, I'm not sure that's true. I think this had been developing for quite some time, and it would have happened eventually. But it's not a but for test. It's not, you know, I'm on my way over here today. Let's just say hypothetically I'm running late, and I run two red lights so I can get here quicker. And as I'm pulling into the parking spot where Mr. Gozeman slips and falls, and boom, I hit him and cause him grievous injury. The fact that I was negligent in running those red lights isn't a legal cause of that accident. Even though it would have happened, it certainly would not have happened, because if I hadn't run those red lights, I wouldn't have been there then. And he would be in the courthouse. It's not a but for test. The test is whether or not, as a factual matter, the board's determination that Lieutenant Hayes, when he made this decision, was not motivated by these grievances is against the manifest way of the evidence. And I don't know how you can possibly say that that factual finding is against the manifest way of the evidence. And I don't think we can just look at this case in a vacuum as simply as Mr. Baker tries to portray it here. The TRU, as I think you mentioned, is an elite unit. I mean, they respond to the most serious situations out there, terrorist attacks, hostage situations, school shootings. They protect presidents. The reason we submitted all that testimony was because it fully supported what Hayes determined in his memo. Hayes didn't say anything about these grievances. He talked only about trust. And, you know, just for example, also in the chain of command, you had James Tapscott, who is the assistant commander. He wasn't even at the meeting. He didn't know anything about these grievances. He finds out about it later on. He talks to virtually most members of the TRU. Not a single one of them mentioned the grievances. They're not concerned about the grievances. They're concerned about their backs. They're concerned about the safety of the community. They're concerned about the ability of this unit to function. And the evidence in this case is overwhelming that this occurred over a period of time. And many of these things were discussed during the meeting. You know, I understand that Mr. Baker wants to focus only on the grievances, and it's true. The Miller memo did say this is the reason that we had the meeting. But in the meeting, they talked about all kinds of things. You mentioned the gun in the oven incident. That's a serious thing, Your Honors. That was an AK-47 that was in an oven, and a confidential informant had told them about this. Before the raid, they weren't supposed to look in this oven because it might reveal that confidential source. What happens? They go in there, and Coster tells one of the other members, hey, look in that oven for the gun. So he looks in the oven, and he gets the gun. Afterwards, Hayes is livid about that. He's livid because, my gosh, you're not supposed to do that. That seriously undermines the safety of this confidential informant, and all kinds of terrible things could happen. So what happens after the meeting? The one officer fesses up. He says, hey, I did it. Coster remains silent. Now, those things, that and the FOIA request you mentioned, were all discussed during that meeting. And the memo that he keeps relying on so strenuously, which is not really the key memo. The key memo is the Hayes memo. That memo says that, look, after raising all these concerns, Officer Coster basically said, hey, I wouldn't do anything different. In other words, he was defiant. It doesn't matter. And I think the board was entitled to determine that, hey, this guy is so inflexible that he won't even admit, won't even own up to his mistake, even after it's brought to his attention. So I think that it's very important for this court to, as Mr. Dozman says, to consider the standard review here. The standard review is highly deferential. If this court decides to substitute its judgment for the judgment of the board here, quite frankly, I think it's going to destroy the TRQ. There's testimony in the record that many of these people, when they were talking about the trust issue, they said, look, this is going to lead to resignations. This unit has to affect it, has to. I mean, this is not a situation where they fired this guy or did anything like that. They removed him from the TRQ. And Hayes did that only because of the trust issues. And, you know, this notion that timing can somehow trump that, that the temporal relationship is the only thing that's important here, simply doesn't take into account the record in this case or the burden of proof. And the burden of proof is on Officer Koster to prove that that was a substantial or motivating factor. I just think there's overwhelming evidence that it was not. I think that's all I have, unless the court has any questions. Thank you. No questions. Thank you. Thank you. And I think that what they have said is they are bringing up these background issues. The board didn't rely on those issues. And the only way for me to get that across is to ask the court to make sure that you read the board's decision, because that's what's on review. They're saying, well, the board could have found that this was accumulation. That's not what they found. They relied upon two things. They relied upon these two memos. It was the Miller memo, which is very clear in what it says, and then they rely upon the Hayes memo, the Hayes memo which attached a copy of the Miller memo to it. So this is what they are relying upon. That was Hayes' recommendation, these memos. And it's because they don't trust. The reason they don't trust is because of the grievances. Those memos make that perfectly clear. That's not speculation on my part. That's not jumping to conclusions. That's what it is. And the idea that the board can say, well, there's a lack of trust amongst the teammates, so therefore we can remove them, that becomes a very, very dangerous precedent to set. Let's say that this were the case where somebody was an Islamic member of the team, and all of a sudden there's a terrorist action that occurs, and somebody is removed because there are people on the team who don't trust them. They don't trust that somebody who is of a Muslim background can have their back. We're not here today. That case is open and shut. You can't do that. It's the same exact thing here. They didn't trust him. All these other things that they raised that occurred years in the past were never an issue. There's nothing in the evidence to show Coaster was ever disciplined for this, that there was ever a write-up for it. Nothing. Nothing. Counsel, you said to make sure we read the board's order. Although the filing of the grievances was mentioned, the Mellon memo clearly indicates the TRU members were not upset because charging party filed grievances. Rather, they were upset that the subject and nature of those grievances demonstrated charging party would only look out for himself at the expense of fellow team members, which they felt was antithetical to the TRU. Indeed, the Hayes memo focuses only on the trust issues fellow TRU members had with the charging party. It does not even mention the filing of grievances. What is there about that that supported your position? Well, I think the entire thing is they're saying Hayes relies upon what the team is telling him. The team is telling him we don't trust them, not because he's filing grievances, but because of the nature of the grievances themselves. We don't trust him because he is filing these grievances. That's what Hayes is told. Hayes says, okay, I'm going to ask for him to be removed because he's not trusted. The whole reason for the lack of trust are the grievances. There's nothing more, and that's exactly what they said. As long as somebody uses the word grievance in the conversation, apparently, that ties in whatever the person may have done to a grievance, and therefore it's illegal. Well, Justice DeArmond, I would suggest that you read carefully the Miller memo because I don't think that they just touch on grievances. Or write that one, too. I mean, I think it goes into pretty significant length about the grievances. All of these other issues that they have brought up today, the gun in the oven, that's not mentioned there. The summary judgment, that's not mentioned in there. No, but they mentioned other problems. The only other issue they mentioned was the FOIA issue. That was the only other issue that was mentioned in the Miller memo. And the standard for this court, and I would point to the Supreme Court's decision in the City of Burbank versus Illinois State Labor Relations Board, is that the employee's protected conduct was a substantial or motivating factor in the adverse action. It doesn't have to be the sole, it doesn't have to be the only, it doesn't have to be the primary. It has to be a substantial or motivating factor. And I think that nobody could look at this case and say that if Travis Coaster hadn't filed his grievances that he would have been removed from the TRU. For that reason, we are asking that this court reverse the decision of the board and reinstate the decision of the administrative block judge. No further questions? Thank you. We'll take a matter of goodbye.